A92A1601. MINSTER v. POHL.
A92A1602. CANDLER GENERAL HOSPITAL, INC.
et al. v. MINSTER.
(426 SE2d 204)

SOGNIER, Chief Judge.

George A. Minster, as executor of the estate of Mary Elizabeth Minster Hattrich, filed a medical malpractice action against Candler General Hospital, Inc. ("the hospital"), and its employee Mary Hines, R.N. The complaint was later amended to add as defendants Stephen Pohl, M.D. and William Hitch, M.D., P.C. The trial court denied motions to dismiss the complaint made by Hines, the hospital, and Pohl on the ground that the expert's affidavits attached failed to comply with the requirements of OCGA § 9-11-9.1. Pohl then filed a motion for summary judgment, which was granted. In Case No. A92A1601, Minster appeals from the grant of summary judgment to Pohl. In Case No. A92A1602, the hospital and Hines appeal from the denial of their motion to dismiss. Hitch is not involved in this appeal.

The record reveals the following salient facts: Mary Hattrich ("the decedent") was admitted to the hospital for surgery. After sur-

gery was performed, the decedent developed respiratory problems, and both a breathing tube and a nasogastric feeding tube were inserted. The decedent apparently pulled out the tubes, and Hines reinserted the feeding tube. She then asked Pohl, who was the emergency room doctor on duty, to view an x-ray to verify that she had properly replaced it. Pohl viewed the x-ray, observed that the tube was incorrectly placed in the decedent's right lung rather than in her stomach and needed to be replaced, and noted that fact in the decedent's progress notes. A pneumothorax was later discovered in the decedent's right lung, which eventually led to her death. In the complaint, Minster alleged that Hines was negligent in failing to properly restrain the decedent to prevent her from extubating herself and in improperly inserting and inadequately verifying the placement of the feeding tube. The hospital's liability was premised upon respondeat superior. Minster also alleged that although Pohl correctly noted that the feeding tube was improperly placed, he was negligent in failing to recognize and report the development of the pneumothorax, which was visible on the x-ray.

1. The trial court granted Pohl's motion for summary judgment on the basis that no doctor-patient relationship existed between Pohl and the decedent. In Case No. A92A1601, Minster contends the trial court's conclusion was erroneous.

It is well established that "before a plaintiff may recover on the theory that he received negligent treatment from a defendant physician, the plaintiff must show that a doctor-patient relationship existed between them. In such cases, called 'classic medical malpractice actions' . . . , doctor-patient privity is essential because it is this 'relation which exists between physician and patient which is a result of a consensual transaction' that establishes the legal duty to conform to a standard of conduct. [Cit.]" Bradley Center v. Wessner, 250 Ga. 199, 201 (296 SE2d 693) (1982). In his affidavit proffered in support of the motion for summary judgment, Pohl averred that he "was asked by an employee of [the hospital] to view an x-ray for NG tube placement which [he] correctly did"; and that he "had no consensual or contractual relationship with the [decedent]," had not communicated with her or any member of her family, and had received no compensation from them or from the hospital.

Minster concedes that no consensual relationship in the usual sense existed between Pohl and the decedent, but argues that, contrary to the trial court's finding, the affidavit of Dr. Scott Fowler, proffered in opposition to the motion for summary judgment, provides some evidence that a doctor-patient relationship was established, and should have precluded the entry of summary judgment in favor of Pohl. Dr. Fowler averred that he was a medical doctor licensed to practice in Georgia and was familiar with the practice of

medicine in emergency departments, and opined that to a reasonable medical certainty, Pohl's entry on the decedent's progress notes could be interpreted as a direction or instruction to replace the feeding tube, and as such, was "an affirmative intervention into a patient's care, amounting to treatment" that created a "limited doctor-patient relationship."

Pohl's averment that he had not communicated with the decedent or her family and had viewed the x-ray merely as a courtesy to a member of the hospital staff was based on his personal knowledge of those facts, while Dr. Fowler's averment was an opinion. Although "[t]he opinions of experts on any question of science, skill, trade, or like questions shall always be admissible," OCGA § 24-9-67, "the scope of what is admissible as expert opinion testimony is not unlimited." *Clanton v. Von Haam*, 177 Ga. App. 694, 695 (1) (340 SE2d 627) (1986). No professional skill or specialized medical knowledge is necessarily required to resolve the issue whether a doctor-patient relationship existed. Id. at 696 (1). Rather, "[t]he established test in Georgia for determining the initial creation of a physician-patient relationship is well within the comprehension of the average layman, in that it more nearly involves the application of non-expert concepts of a contractual nature rather than any expert medical principles." Id. Fowler's affidavit evinced no more than a non-medical opinion from a witness who happened to be a physician. Id. Accordingly, the opinion of Dr. Fowler on this issue was neither probative nor admissible as expert medical testimony. Id.

The question remains, however, here as in *Clanton*, supra at 696 (2), whether disregarding Dr. Fowler's opinion, the evidence of record supports Minster's contention that some form of doctor-patient relationship existed so as to support a claim for malpractice. The only evidence of record bearing on this issue, other than the affidavit of Dr. Fowler, consists of Pohl's affidavit and the decedent's medical records containing Pohl's chart notation, and neither includes a direct reference to this issue. Because on motion for summary judgment all justifiable inferences are to be drawn in the respondent's favor, however, *Barber v. Perdue*, 194 Ga. App. 287, 289 (390 SE2d 234) (1990), we must consider whether any justifiable inference favorable to Minster on this issue may be drawn either from Pohl's affidavit or from his actions as reflected in the medical records. We find none.

This court has held repeatedly that a doctor-patient relationship must be consensual. See, e.g., *Bradley Center*, supra; *Clough v. Lively*, 193 Ga. App. 286, 287-288 (387 SE2d 573) (1989); *Clanton*, supra at 696 (1); *Buttersworth v. Swint*, 53 Ga. App. 602, 603-604 (2) (186 SE 770) (1936). In the instant case the decedent's incapacity, admitted by Minster, rendered it impossible for her to form such a relationship, and Pohl's averment that he did not communicate with

the decedent's family is unrebutted. Although Pohl unquestionably took action with respect to the decedent, viewing the x-ray and making a notation on her chart, nothing in the record justifies the inference that Pohl was acting *as her doctor*. Accordingly, the trial court properly found that no doctor-patient relationship existed.

2. Minster also contends that even should this court find no doctor-patient relationship, summary judgment was improperly granted. He argues that although Pohl's duty to the decedent, a necessary element in establishing a malpractice claim against him, see *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (1) (a) (304 SE2d 922) (1983), would usually arise from a consensual doctor-patient relationship, in this case such a duty arose out of Pohl's employment as an emergency room physician at the hospital. We do not agree.

Although there are exceptions to the requirement that a doctor-patient relationship be shown, see *Clough*, supra at 287, the facts of this case do not support Minster's argument that this case falls within any of those exceptions. In his affidavit proffered in support of the motion for summary judgment, Pohl averred that he "viewed the x-ray as a courtesy to the staff of [the hospital] and not out of any obligation or duty." Insofar as Minster's complaint may be construed as a factual allegation that Pohl was under contractual obligation to attend to a patient in the decedent's circumstances or that such attendance was the custom at the hospital, Pohl's affidavit pierced this factual allegation. Minster proffered no evidence rebutting Pohl's averment. Hence, the trial court properly concluded that the evidence adduced by Minster failed to support such a factual allegation. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).

Further, our review of the applicable law convinces us that the narrow exceptions to the rule that existence of a doctor-patient relationship must be shown before liability may be imposed for medical malpractice do not encompass the situation presented here, and we decline to expand them to do so. The rule is generally followed by most other states, *Peace v. Weisman*, 186 Ga. App. 697, 703 (368 SE2d 319) (1988) (Benham, J., dissenting), which is indicative of its wisdom. We are persuaded that creating an exception to the rule for the situation sub judice would be detrimental to our health care delivery system, causing competent professionals who happen to be on the hospital premises but have no relationship to the patient to decline out of natural prudence to perform even minimal courtesies as a favor to busy hospital staff. We find this danger to be greater than the risk suggested by Minster of insulating such physicians from liability, particularly because applying the general rule does not leave the patient without a remedy should she prove negligence on the part of the hospital or its employees in any regard.

Accordingly, because the doctor-patient relationship was a necessary predicate for Minster's claim of medical malpractice, and this element was lacking, see Division 1, supra, the trial court properly entered summary judgment in favor of Pohl. See *Clanton*, supra.

3. We do not address Minster's argument that a question of fact remains regarding whether Pohl is entitled to immunity under OCGA § 51-1-29, the "Good Samaritan" Statute, compare *Clayton v. Kelly*, 183 Ga. App. 45 (357 SE2d 865) (1987), because neither a claim of such immunity nor Minster's argument based thereon was asserted below. On appeal, we may only address issues that were raised and ruled on by the trial court. *Venture Design v. Original Appalachian Artworks*, 197 Ga. App. 432, 434 (3) (398 SE2d 781) (1990).

4. In Case No. A92A1602, the hospital and Hines contend the trial court erred by denying their motion to dismiss the complaint as to them, because the affidavit of Susan Clarke Case, R.N., attached to the complaint failed to comply with OCGA § 9-11-9.1 in two respects.[1]

(a) In her affidavit, Case averred that she was a registered nurse licensed to practice in Georgia and was familiar with the standard of care applicable to the nursing profession generally with regard to the restraint of intubated patients and the proper placement and verification of feeding tubes. She then averred that she had reviewed copies of the decedent's medical records, and from her review of those records it was her opinion, based upon a reasonable degree of professional certainty, that Hines should have restrained the decedent in order to prevent her from extubating herself; that Hines both improperly placed the feeding tube and failed to properly verify placement of the feeding tube; and that the improper placement of the feeding tube caused the pneumothorax eventually leading to death. The hospital and Hines maintain that Case's affidavit was insufficient to satisfy OCGA § 9-11-9.1 because it did not include Case's explicit averment that Hines' actions violated the applicable standard of care.

We do not agree. The statute does not require that specific language be employed. It requires only that the affidavit "set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." OCGA § 9-11-9.1 (a). We find that Case's affidavit fulfills this requirement unequivocally by listing the appropriate actions in each case; stating that Hines did not take the appropriate actions; and stating specifically that the decedent "*should have* been restrained"; that Hines "*improperly* placed the feeding tube"; and that Hines "*did not properly* verify placement of

---

[1] OCGA § 9-11-9.1 applies to a hospital when it is sued under a theory of respondeat superior for the professional negligence of its employee nurse. See *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 63 (3) (424 SE2d 632) (1992).

the feeding tube." (Emphasis supplied.) OCGA § 9-11-9.1 establishes "an 'exception to the general liberality of pleading permitted under (the Civil Practice Act, OCGA § 9-11-1 et seq.),' [cit.]," *0-1 Doctors &c. v. Moore*, 190 Ga. App. 286, 288 (1) (378 SE2d 708) (1989), and "should be construed in a manner consistent with the liberality of the Civil Practice Act where such construction does not detract from the purpose of § 9-11-9.1 'to reduce the number of frivolous malpractice suits being filed.' [Cit.]" *Gadd v. Wilson & Co.*, 262 Ga. 234, 235 (416 SE2d 285) (1992).

*Piedmont Hosp. v. Milton*, 189 Ga. App. 563 (377 SE2d 198) (1988), relied on by the hospital and Hines, does not require a different result. In *Milton*, an action against a hospital for actions of its employee nurse alleged to be contrary to the attending doctor's instructions, the affidavit attached to the complaint in compliance with OCGA § 9-11-9.1 was that of the attending doctor, who averred simply that he "did not anticipate" that a nurse would act as the defendant nurse had. We held that affidavit insufficient both because it failed to state that the doctor was an expert competent to testify in the field of nursing, and also because it did not *"indicate* that [the hospital's] nursing staff breached the requisite degree of care and skill required of the nursing profession generally by deviating from the treating physician's post operative instructions. [Cit.]" (Emphasis supplied.) Id. at 564. Here, Case's affidavit "indicates" unequivocally that Hines breached the requisite degree of care and skill required of the nursing profession generally by setting forth specific acts of negligence, although those exact words were not used. Accordingly, the affidavit was in compliance with the requirements of OCGA § 9-11-9.1.

(b) The contention of the hospital and Hines that Case's affidavit was defective because the medical records on which Case averred she relied were not attached to the affidavit is controlled adversely to them by our holding in Division (4) (b) of *HCA Health Svcs. v. Hampshire*, 206 Ga. App. 108 (424 SE2d 293) (1992). Given that Case provided a detailed factual basis for her allegations of negligence in the body of her affidavit and specifically identified the records she reviewed as the source of those facts, the affidavit complied with the statute.

Accordingly, because Case's affidavit complied with OCGA § 9-11-9.1, the trial court did not err by denying the motion to dismiss the complaint against the hospital and Hines. *HCA Health Svcs.*, supra.

*Judgments affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 23, 1992 —
RECONSIDERATION DENIED DECEMBER 4, 1992 

*Wiseman, Blackburn & Futrell, James B. Blackburn, Douglas M. Robinson,* for Minster.

*Oliver, Maner & Gray, William P. Franklin, Jr., Wendy W. Williamson,* for Pohl.

*Bouhan, Williams & Levy, Frank W. Seiler, Roy E. Paul, Peter D. Muller,* for Candler General Hospital.