A05A1173, A05A1174. CRISP REGIONAL HOSPITAL, INC. et al. v. OLIVER; and vice versa.
A05A1175. THOMAS et al. v. OLIVER.
(621 SE2d 554)

ANDREWS, Presiding Judge.

Milton Oliver sustained a back injury while working as a custodian for Crisp Regional Hospital, Inc. (Crisp Regional). Acting as Oliver's employer pursuant to the provisions of the Georgia Workers' Compensation Act (WCA), Crisp Regional provided him with medical care benefits for the injury by sending him to its own hospital-operated medical clinic for treatment. Oliver claims that the manner in which the medical care was provided negligently delayed diagnosis and treatment of his back injury, which allowed pressure on his spinal cord resulting from the injury to worsen and cause permanent paralysis. Oliver sued Crisp Regional and Crisp Regional Health Services, Inc. (jointly referred to as Crisp Regional) alleging vicarious liability: (a) for the simple negligence of nonprofessional administrative employees involved in providing the medical care, (b) for the

---

professional negligence of nurse employees, and (c) for the professional negligence of two physicians (alleged to be employees or apparent agents) who treated Oliver at the hospital clinic.[1] Oliver also brought a breach of contract claim against Crisp Regional, and individual professional negligence actions against the two treating physicians, Perry M. Thomas, M.D., and Kele J. Sewell, M.D.[2] The three appeals consolidated for this opinion arise from the trial court's rulings on various cross-motions for summary judgment.

1. The first issue presented is whether the exclusive remedy provision of the WCA bars Oliver's tort action against his employer, Crisp Regional. As to Oliver's claim that Crisp Regional was vicariously liable for the professional negligence of its physicians and nurse employees or apparent agents, the trial court ruled that the exclusive remedy provision of the WCA did not bar these claims. Based on this ruling, the trial court denied Crisp Regional's motion for partial summary judgment on Oliver's claims seeking to impose vicarious liability for the alleged negligence of the physicians. In Case No. A05A1173, Crisp Regional appeals from this ruling pursuant to our grant of its application for an interlocutory appeal.[3] As to Oliver's claim that Crisp Regional was liable for the negligence of nonprofessional administrative employees, the trial court ruled that the exclusive remedy provision of the WCA barred this claim and granted Crisp Regional's motion for partial summary judgment on the claim. In Case No. A05A1174, Oliver appeals from this ruling.

After Oliver reported his work-related back injury to his supervisor, Crisp Regional accepted the injury as compensable under the WCA and provided him with medical treatment benefits pursuant to the WCA. The exclusive remedy provision of the WCA is set forth in OCGA § 34-9-11 (a) and provides that an employee's rights and remedies under the WCA exclude all other rights and remedies of the employee against the employer "on account of such injury, loss of service, or death." *Warden v. Hoar Constr. Co.*, 269 Ga. 715, 716 (507

---

[1] On appeal, the parties refer jointly to Crisp Regional Hospital, Inc. and Crisp Regional Health Services, Inc. as the employer of the named professionals and nonprofessionals, as well as Oliver's employer. The record reflects that Crisp Regional Health Services, Inc. was incorporated as a holding company for its subsidiary, Crisp Regional Hospital, Inc. Accordingly, for the purposes of these appeals, we find that both entities occupy the same legal position. *Harvey v. Fine Products Co.*, 156 Ga. App. 649 (275 SE2d 732) (1980).

[2] The individual action against Dr. Thomas included a claim against his professional entity, Physician Services Central, LLP. The action against Dr. Sewell named him individually and doing business as Sewell Family Medicine & Urgent Care.

[3] Although the trial court ruled that the exclusive remedy provision did not bar Oliver's claims that Crisp Regional was vicariously liable for the professional negligence of its nurse employees, the court granted summary judgment in favor of Crisp Regional on this claim, ruling there was no evidence that the alleged negligence of the nurse employees proximately caused Oliver's injuries.

SE2d 428) (1998). The policy advanced by this provision is to provide the employee, who suffers a work-related injury compensable under the WCA, with statutory benefits from the employer without regard to issues of negligence, contributory negligence, or assumption of risk, while the employer receives immunity from common law tort liability as the quid pro quo for providing the benefits. *Smith v. Gortman*, 261 Ga. 206, 207 (403 SE2d 41) (1991); *Pardue v. Ruiz*, 263 Ga. 146, 148 (429 SE2d 912) (1993). Moreover, the WCA is liberally construed "for the purpose of bringing employers and employees within [its] provisions . . . to provide protection for both." OCGA § 34-9-23. Accordingly, where the WCA is applicable, it provides the exclusive remedy for an injured employee against the employer.

The Supreme Court applied these principles in *Doss v. Food Lion*, 267 Ga. 312 (477 SE2d 577) (1996), when it considered whether an employee who suffered a work-related injury compensable under the WCA could bring an independent tort action against his employer claiming that the employer exacerbated the work-related injury when it delayed authorizing medical treatment to which the employee was entitled under the WCA. The Court found that, because the WCA penalized unreasonable delays in authorizing medical treatment and provided additional benefits for work-related injuries made worse by the delay, the WCA applied under the circumstances and the exclusive remedy provision barred the employee's tort action against his employer. Id.

The reasoning employed in *Doss* also applies in the present case. Oliver claims that, by simple or professional negligence, employees or apparent agents of Crisp Regional worsened his initial work-related injury by delaying proper diagnosis and treatment. Because the WCA provides a remedy in the form of benefits for a work-related injury exacerbated or aggravated subsequent to the initial injury, Oliver cannot accept WCA benefits and also bring an independent tort action against his employer seeking to recover damages for worsening of the injury. *Doss*, 267 Ga. at 312-313, n. 6. Moreover, the WCA specifically provides that "[t]he employer shall not be liable in damages for malpractice by a physician or surgeon furnished pursuant to this chapter, but the consequences of any malpractice shall be deemed part of the injury resulting from the accident and shall be compensated for as such." OCGA § 34-9-203 (b). Because the WCA applies and provides compensation for Oliver's initial work-related injury and for worsening of the injury caused by the negligence he alleged in the tort action against Crisp Regional, the exclusive remedy provision of the WCA bars the tort action. OCGA § 34-9-11 (a); *Doss*, 267 Ga. 312.

Contrary to the trial court's ruling, the fact that Oliver alleged his injury was caused by professional negligence does not create an

exception to the exclusive remedy provision which would allow Oliver to sue Crisp Regional for vicarious liability. Where the WCA applies, the exclusive remedy provision not only prevents the injured employee from bringing a tort claim against the employer, but also prevents a tort claim against any co-employees of the same employer. OCGA § 34-9-11 (a); *Clark v. Williamson*, 206 Ga. App. 329, 330-332 (425 SE2d 311) (1992). Although the immunity provided to co-employees does not extend to all professional co-employees, this exception does not support Oliver's tort claim against Crisp Regional. For example, in *Davis v. Stover*, 258 Ga. 156 (366 SE2d 670) (1988), an employee working for Ford Motor Company complained of chest pain and shortness of breath and was examined by a Ford-employed physician who diagnosed a respiratory problem. The next day the employee suffered a heart attack at work and died. After the employee's widow was awarded benefits under the WCA, she brought a medical malpractice action against the co-employee physician alleging misdiagnosis and negligent treatment of her husband's heart condition. *Davis* held that, because of the relationship of trust between the physician and patient, the exclusive remedy provision of the WCA did not bar the medical malpractice action brought against the individual co-employee physician. Id. at 157. Accordingly, *Davis* is authority supporting a professional negligence action by Oliver against an individual physician who treated him while acting as an employee or apparent agent of his employer, Crisp Regional, but it provides no support for Oliver's tort action seeking to impose vicarious liability for the negligence on Crisp Regional.

Citing *Drury v. VPS Case Mgmt. Svcs.*, 200 Ga. App. 540 (408 SE2d 809) (1991), Oliver also contends that, because his tort action against Crisp Regional is based on professional negligence which occurred subsequent to the initial job-related injury, the exclusive remedy provision does not bar the action. In *Drury*, the employee suffered a work-related injury and received WCA benefits provided by the employer, including professional vocational rehabilitation services provided by a separate company, VPS. When the employee sued VPS claiming the rehabilitation services were negligently provided, VPS claimed the exclusive remedy provision of the WCA barred the suit. Recognizing that the exclusive remedy provision would bar a tort claim by an employee "against his employer or his employer's alter ego for his compensable on-the-job accident," *Drury* held that VPS did not act as the employer's alter ego, but was engaged in "the subsequent provision of [professional] services to a previously injured workers' compensation claimant." Id. at 541. Thus, *Drury* found that the exclusive remedy provision did not bar the employee's negligence action against VPS because there was no shield against the professional negligence claim (see *Davis*, 258 Ga. 156), and

because VPS was not otherwise immune as the employer or its alter ego. *Drury*, 200 Ga. App. at 541-542. Even if Oliver's tort action against Crisp Regional, like the action in *Drury*, was based on professional negligence which occurred after the initial job-related injury, Oliver's action is barred by the exclusive remedy provision because, unlike the action in *Drury*, Oliver seeks to impose tort liability on his employer.

Accordingly, we find that: (a) the trial court correctly ruled that the exclusive remedy provision barred Oliver's claim seeking to hold Crisp Regional vicariously liable for the negligence of nonprofessional administrative employees, and correctly granted Crisp Regional's motion for partial summary judgment on this claim, and (b) the trial court erred by ruling that the exclusive remedy provision did not bar Oliver's claim seeking to impose vicarious liability on Crisp Regional for the professional negligence of physicians who acted as its employees or apparent agents, and erred by denying Crisp Regional's motion for partial summary judgment on this claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Oliver alleged that Crisp Regional was vicariously liable for the alleged negligence of Dr. Thomas and Dr. Sewell because they acted as either actual or apparent agents of Crisp Regional. The trial court granted partial summary judgment in favor of Crisp Regional on the actual agency claim, ruling that Dr. Thomas and Dr. Sewell were independent contractors rather than actual agents, and that a factual issue remained as to whether they were apparent agents of Crisp Regional. In Case No. A05A1174, Oliver appeals from this ruling claiming that the trial court erred by finding that the physicians were independent contractors rather than actual agents. Because we determined in Division 1, supra, that the WCA's exclusive remedy provision bars Oliver's tort action seeking to impose vicarious liability on Crisp Regional for the negligence of the physicians, the action fails regardless of whether the physicians were negligent as actual agents or independent contractor/apparent agents. It follows that Oliver's appeal from this ruling is rendered moot.

3. The trial court also granted summary judgment in favor of Crisp Regional on Oliver's claim seeking to impose vicarious liability on Crisp Regional for the professional negligence of its nurse employees. In Case No. A05A1174, Oliver contends the trial court erred by granting summary judgment on this claim on the basis that there was no evidence the alleged nursing negligence proximately caused his injuries. See note 3, supra. We need not determine whether the trial court correctly granted summary judgment for lack of proximate cause. Because the exclusive remedy provision of the WCA barred this claim by Oliver against his employer, Crisp Regional (see Division 1, supra), we affirm the trial court's grant of summary judgment

in favor of Crisp Regional under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

4. In Case No. A05A1174, Oliver appeals from the trial court's grant of summary judgment in favor of Crisp Regional on his breach of contract claim. On this claim, Oliver alleged that Crisp Regional breached a contract entered into with Dr. Sewell requiring Crisp Regional to purchase professional liability insurance covering Dr. Sewell. Oliver alleged that the purchase of liability insurance under the contract was for his benefit as a patient injured by Dr. Sewell's professional negligence, and that he was entitled to sue Crisp Regional for breach of this contractual obligation as a third-party beneficiary of the contract.

For a third party to have standing under OCGA § 9-2-20 (b) to enforce a contract made between other parties, it must appear clearly on the face of the contract that it was intended for the benefit of the third party. *Miree v. United States &c.*, 242 Ga. 126, 135 (249 SE2d 573) (1978); *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (530 SE2d 208) (2000). "The mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient." *Miree*, 242 Ga. at 135. There is nothing on the face of the contract at issue clearly showing that it was intended for Oliver's benefit, and the mere fact that Oliver or other patients might benefit from the purchase of liability insurance under the terms of the contract is not sufficient, without more, to confer the status of third-party beneficiary of the contract. Moreover, the general rule in Georgia is that, with the exception of certain instances where liability insurance coverage is legislatively mandated, "the general rule [is] that liability claimants are not regarded as third-party beneficiaries of liability policies." *Googe v. Florida Intl. Indem. Co.*, 262 Ga. 546, 548 (422 SE2d 552) (1992). There is no such legislative mandate for the purchase of professional liability insurance. Accordingly, the trial court correctly granted summary judgment in favor of Crisp Regional on this claim. *Lau's Corp.*, 261 Ga. 491.

5. In a motion for partial summary judgment, Dr. Thomas and the professional entity through which he provided medical services, Physician Services Central, LLP (Physician Services), sought a ruling from the trial court that no physician-patient relationship existed between Dr. Thomas and Oliver prior to February 5, 2002, and therefore no allegations regarding acts or omissions which occurred prior to that date could form the basis of Oliver's professional negligence action against Dr. Thomas and Physician Services. The trial court denied the motion. In Case No. A05A1175, Dr. Thomas and Physician Services appeal from this ruling pursuant to our grant of their application for an interlocutory appeal.

Dr. Thomas concedes that he had a physician-patient relationship with Oliver as of February 5, 2002, the first date that he saw and physically examined Oliver. Prior to that date, Oliver was seen and physically examined by Dr. Sewell on January 31, 2002, at the Crisp Regional Hospital clinic. Dr. Thomas, who also worked at the clinic, was not present at the clinic on January 31. Oliver told Dr. Sewell on January 31 that he was experiencing back pain and numbness in his lower extremities as a result of his work-related back injury, and Dr. Sewell ordered an MRI scan for Oliver. On the same day, Dr. Sewell was informed by Crisp Regional that it would not perform an MRI on his order because he was not on the workers' compensation panel of physicians authorized to order an MRI for Oliver's work-related injury. Dr. Thomas, who was on the workers' compensation panel of physicians, arrived at the clinic on the morning of February 1, 2002, and was advised by clinic staff that the MRI ordered for Oliver by Dr. Sewell had been refused because Dr. Sewell was not on the Crisp Regional workers' compensation panel. The same morning, Dr. Sewell asked Dr. Thomas to review the notes he had made on Oliver's chart and to indicate his agreement that an MRI was necessary so that the MRI order would have Dr. Thomas's approval as a physician on the workers' compensation panel. Dr. Thomas reviewed Dr. Sewell's notes on Oliver's chart, agreed that an MRI was necessary, wrote and initialed the word "agreed" on Oliver's chart, and then either wrote the order for the MRI or co-signed the order previously written by Dr. Sewell. The MRI was not scheduled, however, until February 7, 2002. Dr. Thomas eventually saw and examined Oliver on February 5, 2002, when Oliver returned to the hospital clinic complaining of increased pain as a result of his work-related back injury. As a result of that examination and another examination performed by Dr. Thomas on the morning of February 6, 2002, after Thomas was admitted to the Crisp Regional Hospital, Dr. Thomas referred Oliver to a neurosurgeon who performed emergency surgery on Oliver on February 6, 2002.

> It is a well-settled principle of Georgia law that there can be no liability for malpractice in the absence of [a] physician-patient relationship. . . . In such cases, called classic medical malpractice actions, doctor-patient privity is essential because it is this relation which is a result of a consensual transaction that establishes the legal duty to conform to a standard of conduct. The relationship is considered consensual where the patient knowingly seeks the assistance of the physician and the physician knowingly accepts him as a patient.

(Citations and punctuation omitted.) *Peace v. Weisman*, 186 Ga. App. 697, 698 (368 SE2d 319) (1988); *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982). Whether a consensual physician-patient relationship existed is generally a factual question for the trier of fact, but "where the facts are shown by such clear, palpable, and undisputed evidence that the [trier of fact] could reasonably draw but one conclusion," the issue may be disposed of by summary judgment. *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 524 (434 SE2d 63) (1993).

Applying these principles, we find on the present record that a factual issue exists as to whether a consensual physician-patient relationship existed between Dr. Thomas and Oliver prior to the point at which Dr. Thomas first saw and examined Oliver on February 5, 2002. Crisp Regional referred Oliver to the hospital-operated clinic to receive medical treatment under the WCA for his work-related injury. Two physicians worked at the clinic, Dr. Thomas and Dr. Sewell, but only Dr. Thomas was on the workers' compensation panel of physicians authorized to provide treatment for the work-related injury. These facts are sufficient to support a reasonable inference that, when Oliver went to the clinic for treatment, he knowingly consented to treatment by a physician on the workers' compensation panel who offered such treatment. See *Anderson v. Houser*, 240 Ga. App. 613, 617-619 (523 SE2d 342) (1999).

Dr. Thomas arrived at the clinic on the morning of February 1, 2002, and learned that Dr. Sewell had examined Oliver at the clinic for a work-related injury and ordered an MRI, but that Crisp Regional refused to perform the MRI because Dr. Sewell was not on the workers' compensation panel and had no authority to order the MRI. With this knowledge, Dr. Thomas reviewed Oliver's chart at Dr. Sewell's request, agreed that an MRI was necessary, and ordered the MRI as an authorized panel physician. These facts are sufficient to support a reasonable inference that, although Dr. Thomas had not physically seen or examined Oliver, he knowingly accepted Oliver as his patient. *Anderson*, 240 Ga. App. at 617-619. Merely offering Dr. Sewell his professional opinion agreeing that an MRI was necessary would not be enough to establish that Dr. Thomas knowingly accepted Oliver as his patient. See *Minster v. Pohl*, 206 Ga. App. 617, 618-620 (426 SE2d 204) (1992); *Dawson v. Fulton-DeKalb Hosp. Auth.*, 227 Ga. App. 715, 718 (490 SE2d 142) (1997), rev'd on other grounds, *Fulton-DeKalb Hosp. Auth. v. Dawson*, 270 Ga. 376 (509 SE2d 28) (1998). But there are additional facts from which a trier of fact could reasonably conclude that Dr. Thomas did more than merely consult with Dr. Sewell and offer a professional opinion. On the present record, a trier of fact could reasonably conclude that Dr. Thomas participated in Oliver's diagnosis and treatment when he

used his authority as a physician on the workers' compensation panel to find that an MRI was necessary and to order the MRI as part of Oliver's treatment. See *Anderson*, 240 Ga. App. at 618-619. Accordingly, the trial court correctly denied the motion for partial summary judgment brought by Dr. Thomas and Physician Services on this issue. *Lau's Corp.*, 261 Ga. 491.

*Judgment reversed in Case No. A05A1173. Judgment affirmed and appeal dismissed as moot in part in Case No. A05A1174. Judgment affirmed in Case No. A05A1175. Phipps and Mikell, JJ., concur.*

DECIDED SEPTEMBER 23, 2005 —

*Hall, Booth, Smith & Slover, Anthony A. Rowell, Thomas M. Burke, Jr., Taylor, Odachowski & Sperry, Philip R. Taylor*, for Crisp Regional Hospital, Inc. et al.

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney*, for Oliver.

*Love, Willingham, Peters, Gilleland & Monyak, John A. Gilleland, Stacey A. Carroll*, for Thomas et al.