**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A1902. PADGETT v. BAXLEY AND APPLING COUNTY
HOSPITAL AUTHORITY.

MCFADDEN, Judge.

Nelda F. Padgett's mother was an Alzheimer's patient at a nursing home when she fell from her shower chair, suffered serious injuries, and died a week later. Padgett sued the nursing home[1] on behalf of her mother's estate for pain and suffering and as next of kin for wrongful death damages, alleging that her mother's injuries and death were caused by professional negligence, ordinary negligence, and breach of contract, and also on the theory that her mother's statutory rights as a nursing home patient under the "Bill of Rights for Residents of Long-term Care Facilities," OCGA § 31-8-100 et seq., had been violated. The trial court granted the nursing home's

---

[1] The defendant is Baxley and Appling County Hospital Authority d/b/a Appling Healthcare System d/b/a Appling Nursing and Rehabilitation Pavilion.

motion for summary judgment on all grounds and Padgett appeals. As detailed below, we find no genuine issues of material fact as to the claims for professional negligence, breach of contract, or breach of a duty under OCGA § 31-8-100 et seq., and we affirm the grant of summary judgment on those claims. We find, however, that genuine issues of material fact exist as to the claim for ordinary negligence, and we reverse the grant of summary judgment as to that claim.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000). Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact. *Weldon v. Del Taco Corp.*, 194 Ga. App. 174 (390 SE2d 87) (1990).

So viewed, the record establishes that Padgett's mother, Juanita Walls, became a patient at the Appling Nursing and Rehabilitation Pavilion in March 2006. On

November 22, 2008, a certified nursing assistant ("CNA") and another employee at the facility placed Walls in a shower chair so the CNA could bathe her. The CNA removed Walls' underwear, turned around and placed it in a plastic bag, and then she turned back around to see Walls on the shower floor. Walls suffered multiple injuries and underwent surgery the next day. She was transferred to hospice care the day after that, and died on November 29, 2008, a week after the fall.

Padgett filed the underlying action alleging that the nursing home was negligent in

> failing to follow proper fall prevention protocol for [Walls] by leaving her unattended in the shower room; by failing to use proper restraints to insure that she did not fall out of the shower chair; . . . and for violating the standards and duties of providing that reasonable care and skill applicable to nurses, doctors and staff in a nursing home environment.

Padgett also asserted that the nursing home "failed to exercise that degree of skill and care required of medical professionals and nursing professionals generally and under similar conditions and like surrounding circumstances in a nursing home setting." She attached two affidavits to her complaint, one from an internal medicine physician ("Dr. Jones"), and one from a registered nurse ("Nurse Smith"). Both health care professionals averred that they made their affidavits pursuant to OCGA § 9-11-9.1

3

in support of Padgett's professional negligence claim. In essentially identical affidavits, the affiants averred that Walls was at high risk for falls and that the nursing home was "negligent by failing to properly follow fall protocol[,] by leaving the patient unattended, . . . by failing to properly supervise staff; and by failing to provide an adequate shower chair with proper restraints." Dr. Jones said the nursing home was also negligent for "failing to write correct orders to ensure [Walls'] safety," and Nurse Smith said the nursing home was negligent for "failing to follow or request orders to ensure [Walls'] safety."

The nursing home moved for summary judgment, asserting that Padgett had submitted no competent expert testimony to support her claims. It maintained that Padgett's affidavits were insufficient to establish any genuine issues of material fact because the affiants' opinions were not based on personal knowledge, and because certified copies of the medical records on which the opinions were based were not attached to the affidavits. Further, the nursing home argued that the affidavits did not contain the necessary information required by OCGA § 24-9-67.1 to establish the affiants' expert qualifications.

In response to the nursing home's motion, Padgett argued that the nursing home had failed to submit an expert's affidavit that pierced the allegations in her

4

complaint. She further contended that the affidavits attached to her complaint constituted sufficient evidence to create a jury issue, and also submitted the affidavit of Ellen Lewis, a registered nurse. Lewis averred that the medical care and treatment the nursing home provided to Walls, "in particular by her attending nurses, certified nursing assistants (CNAs) and staff fell below that degree of care and skill ordinarily employed . . . in general and under like conditions and similar circumstances." She specifically averred that the CNA

> left Ms. Walls unattended, even if only briefly, failed to request a proper fall and risk assessment before attending to Ms. Walls, or to request correct orders to insure her safety; or to properly supervisor [sic] her while preparing to give her a shower. In addition, they were negligent by placing her in an ill-fitting shower chair without proper restraint or other precautions taken to prevent her from falling out of the chair, or prevent her from pushing herself out.

Finally, Padgett also argued that genuine issues existed regarding her ordinary negligence, breach of contract, and statutory claims.

The trial court granted the nursing home's motion for summary judgment. The court found that the affidavits of Dr. Jones and Nurse Smith that were attached to Padgett's complaint were insufficient to establish a genuine issue of material fact because they were based on the unsupported assumptions that Walls was alone on an

ill-fitting shower chair when she fell, and "d[id] not relate to the standard of care to be exercised by persons who are attending impaired residents while they shower, which is the determinative issue."[2]

The trial court found that "[t]he affidavit of Ellen Lewis, R.N. is therefore the sole expert evidence presented" to establish that an issue of material fact existed about whether the nursing home breached the professional standard of care, but held that Lewis' affidavit was insufficient because Lewis relied on medical records that were not included with the affidavit.

The trial court further concluded that Padgett could not maintain a cause of action for damages based on the "Bill of Rights for Residents of Long-term Care Facilities," OCGA § 31-8-100 et seq., because the alleged tort involved professional negligence, and that she could not prevail on her remaining claims based on the evidence of record.

1. Padgett first contends that the trial court erred in granting the nursing home's motion for summary judgment, arguing that the record contains evidence establishing

---

[2]While the trial court found that the nursing home was procedurally barred from asserting that Padgett's expert affidavits did not comply with the requirements of OCGA § 9-11-9.1, the nursing home did not make that argument. Instead, it challenged the affidavits' "substance rather than form." *Parlato v. MARTA*, 165 Ga. App. 758, 759 (1) (302 SE2d 613) (1983).

the existence of genuine issues of material fact in her professional negligence claim. She asserts that in each of her affidavits, the medical professional testified with specificity about each element required to demonstrate that the conduct of the nursing home staff fell below the applicable standard of care, and that the nursing home presented no evidence that its conduct met the standard of care. She also argues that the nursing home failed to pierce her pleadings by pointing to the absence of particular facts that would entitle it to summary judgment.

However, a defendant need not present expert testimony, or any testimony, to prevail on summary judgment. A defendant need only assert that the plaintiff has not presented evidence sufficient to establish genuine issue of facts on all the elements of the claim for the burden to shift to the plaintiff to establish the existence of jury issues.

> [I]f a defendant who moves for summary judgment can point out by reference to the affidavits, depositions, and other evidence of record that there is no evidence sufficient to create a jury issue with respect to at least one essential element of the plaintiff's case, viewing all evidence and reasonable inferences therefrom in a light most favorable to the nonmoving party, without the necessity of weighing the evidence or determining the credibility of the witnesses, such defendant is entitled to summary judgment unless the plaintiff can come forward with specific evidence giving rise to a triable issue.

7

(Citation and punctuation omitted.) *Meli v. Hicks*, 300 Ga. App. 894, 896 (686 SE2d 489) (2009).

In this case, although Padgett presented the affidavits of three health care professionals, none of them included certified copies of the medical records on which the affiants relied.

> To be sufficient to controvert the defendant's expert opinion and [to] create an issue of fact, the plaintiff's expert must base his opinion on medical records which are sworn or certified copies, or upon his own personal knowledge; and he must state the particulars in which the defendant's treatment of the plaintiff was negligent.

(Punctuation omitted.) *Hailey v. Blalock*, 209 Ga. App. 345, 347 (2) (433 SE2d 337) (1993). We have reasoned that the certified records requirement "responds to the question of hearsay as the foundation for an opinion, and conforms to the rule that mere conclusions are not sufficient to create issues of fact." Id.

The experts averred that they relied upon numerous documents including Walls' medical records, a DHR investigatory report, the other expert affidavits, a medical narrative, and the deposition of the nursing assistant who was with Walls when she fell. However, the certified medical records on which the experts relied were not attached to their affidavits. Nor do the affidavits show that the averments

were made upon personal knowledge because each experts clearly states that the opinions are based "review" of the documentation listed in her affidavit. See *Crawford v. Phillips*, 173 Ga. App. 517, 518 (1) (326 SE2d 593) (1985).

It is well established that an affidavit purporting to rely on papers or other materials not attached to the affidavit is insufficient to create a genuine issue of fact on summary judgment. See *Bregman-Rodoski v. Rozas*, 273 Ga. App. 835, 836-837 (616 SE2d 171) (2005) (affirming grant of summary judgment to defendants when plaintiff failed to file copies of medical records on which her expert affidavit was based). Absent expert testimony that defendant deviated from the requisite standard of care, summary judgment is properly granted in favor of defendant. Id. Given the deficiencies in Padgetts' affidavits, the trial court did not err in granting summary judgment to the nursing home on the professional negligence claim.

2. Padgett also contends that the trial court erred in granting summary judgment on her ordinary negligence claim. The trial court held that "[d]etermining what measures are appropriate to keep a particular nursing home resident reasonably safe calls for the exercise of professional judgment," thus any negligence alleged "was professional negligence rather than ordinary negligence."

"Not all injuries that occur in a hospital, nursing home or other health care facility are the result of professional negligence; they may be solely attributable to ordinary or simple negligence." (Citation omitted.) *Moore v. Lewis Smith Mem. Hosp.*, 216 Ga. App. 299 (454 SE2d 190) (1995). Accord *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71 (413 SE2d 720) (1992). In this case, a genuine issue of material fact exists as to whether the defendant is liable for the ordinary or simple negligence of the CNA who was attending Walls when she fell in the shower, precluding summary judgment on that claim.

When an action alleges negligence by a professional, "[w]hether [the] action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill." *Mendoza v. Pennington*, 239 Ga. App. 300 (1) (519 SE2d 715) (1999). Application of this rule presumes, however, that the allegedly negligent actor was a professional. See generally *Upson County Hosp. v. head*, 246 Ga. App. 386, 390 (1) (540 SE2d 626) (2000) (discussing differences between acts by nonprofessionals, acts by professionals that do not involve professional judgment, and acts by professionals that do involve professional judgment). Here, the allegedly negligent actor was a certified nursing assistant (CNA). A CNA is not one of the "professionals" for which

OCGA § 9-11-9.1 requires an expert affidavit to avoid dismissal of a professional negligence action. See OCGA § 9-11-9.1 (g) (listing professional to which affidavit requirement applies); see also *Sembler Atlanta Dev. I, LLC v. URS/Dames & Moore*, 268 Ga. App. 7, 8-9 (601 SE2d 397) (2004) (affidavit requirement applies only to professionals listed in statute). Nor is a nursing assistant identified as a "professional" in other sections of the Georgia Code. See OCGA §§ 14-7-2, 14-10-2, 43-1-24.

Moreover, "where . . . the plaintiff can prove negligence or breach without proof of a customary procedure and violation of it, the case is not a professional malpractice case." *Razete v. Preferred Research*, 197 Ga. App. 69, 70 (397 SE2d 489) (1990). The actions of the CNA that Padgett alleges were negligent – the CNA's use of shower chair that was too large for Walls and her act of leaving Walls "unattended[] in the shower room" – do not require proof of a customary procedure. They "do[] not turn on a medical question, and a jury would be capable of determining without the help of expert assistance whether the [CNA] exercised due care" when placed a frail and mentally-impaired elderly person in an ill-fitting shower chair and then turned away while assisting that person. (Citations and punctuation omitted.) *Kerr v. OB/GYN Assoc. of Savannah*, 314 Ga. App. 40, 41-42 (1) (723 SE2d

11

302) (2012). Likewise, a jury would be capable of determining whether a causal link existed between these actions and the fall (and resulting injuries) that Walls sustained immediately after these actions. See *Cowart v. Widener*, 287 Ga. 622, 628 (2) (a) (697 SE2d 779) (2010) ("[w]here the causal link between the defendant's conduct and the decedent's injury can be determined by a lay jury without expert guidance, no expert evidence need be produced to defeat a defense motion for summary judgment").

Because a genuine issue of material fact exists as to Padgett's claim for ordinary negligence, the trial court erred in granting summary judgment to the nursing home on that claim.

3. Padgett also contends that the trial court erred in granting the nursing home's motion for summary judgement on her claims for breach of contract and breach of the statutory duty to her created by the "Bill of Rights for Residents of Long-Term Care Facilities," OCGA § 31-8-100 et seq.[3] She asserts that genuine issues of material facts exist as to whether Walls received adequate and appropriate care, treatment and services in compliance with the statute.

---

[3] "Any resident or the representative or legal surrogate of the resident, if any, may bring an action in a court of competent jurisdiction to recover actual and punitive damages against a personal care home or its governing body, administrator, or employee for any violation of the rights of a resident granted under this article." OCGA § 31-8-136 (a).

12

Under her count claiming "professional and general negligence," Padgett alleged that the nursing home "violat[ed] the patient's rights pursuant to OCGA § 31-8-108." She also alleged that the nursing home was liable for punitive damages for violating Walls' rights as a resident of a long-term care facility, citing OCGA § 31-8-136 (a). Finally, in her breach of contract claim, she alleged that Walls "entered into a contract with Defendant wherein for consideration paid, Defendant agreed to provide Juanita Walls with reasonable care and skill in long-term nursing and health care," that the nursing home "failed to provide reasonable care or skill by virtue of the breach of standards stated herein," and that it "breached the contract for long-term care by failing to provide reasonable care and skill for Juanita Walls, resulting in damages to her body, incurred medical and related expenses, and injury to her dignity and privacy."

OCGA § 31-8-108 (a) (2) provides that "[e]ach resident shall receive care, treatment, and services which are adequate and appropriate. Care, treatment, and services shall be provided [i]n compliance with applicable laws and regulations."

> In the context of a nursing home, over and above the contractual obligation the nursing home assumed to take care of its residents, the State has imposed a statutory obligation for it to exercise "reasonable care and skill." OCGA § 31-8-108. . . . The general standard of care

13

required of a nursing home is that degree of care, skill, and diligence usually exhibited by such homes generally in the community.

*Associated Health Sys. v. Jones*, 185 Ga. App. 798, 801 (366 SE2d 147) (1988).

To recover under the statute, Padgett had to show that the CNA "failed to do something which a reasonable person, guided by the above considerations which ordinarily regulated the conduct of affairs of a nursing home, would have done, or ought to have done, and failed to perform such responsibility." *Associated Health Sys.*, 185 Ga. App. at 801. The record contains no evidence in this regard. Nor did Padgett introduce evidence raising an issue of fact as to whether the CNA "failed to properly perform the nonprofessional, administrative aspects" of caring for Walls, or that such a failure "resulted in a regulatory violation leading to [Walls'] injuries. . . ." *Williams v. Alvista Healthcare Ctr., Inc.*, 283 Ga. App. 613, 616 (1) (b) (642 SE2d 232) (2007). Accordingly, the trial court did not err in granting summary judgment as to this claim as well.

4. We have examined Padgett's remaining enumerations of error, and have either addressed them or find them to be without merit.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and McMillian, J., concur fully in Divisions 1, 3, and 4, and concur in the judgment only as to Division 2.*