**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 18, 2017**

# In the Court of Appeals of Georgia

A16A1753, A16A1754. FIELDS et al. v. TAYLOR et al.; and vice versa.

MERCIER, Judge.

In case No. A16A1753, Cheryl Fields, individually, and as the administrator of the estate of Laura Josey, William Josey, and Pamela Denney (collectively "Fields"), appeal the trial court's grant of summary judgment to William Taylor, Jr., Southeast Geriatrics, P.C., THI of Georgia at Shamrock, LLC, d/b/a Shamrock Nursing and Rehabilitation Center and John/Jane Does 1-6 (collectively "Taylor"). In Case No. A16A1754, Taylor appeals the trial court's denial of his motion to exclude allegedly unreliable testimony given by Fields's medical experts. As both appeals arise from the same underlying case, we will rule on both in one opinion for the purposes of judicial economy.

In her appeal, Fields contends that the trial court erred in granting summary judgment to Taylor because she demonstrated that there were genuine issues of material fact to be decided by a jury at trial. We agree, and reverse. In his cross-appeal, Taylor contends that the trial court erred in denying his motion to exclude Fields's medical expert testimony because the experts based their opinions on unsworn and uncertified medical records, because they failed to consider sufficient facts and evidence to form reliable admissible opinions, and because they offered unreliable expert opinions that were not based on reliable principles and methods. Finding no error, we affirm.

The underlying action involves alleged medical errors that took place in 2010 that allegedly led to the death of Laura Josey. Fields brought the underlying action individually, and as the administrator of Josey's estate. The complaint alleged, inter alia, claims for wrongful death, pain and suffering, negligence per se, and punitive damages. Fields contended that the care given to Josey, while she was a patient at Shamrock Nursing and Rehabilitation Center (which is no longer a party to the underlying litigation) fell below the applicable standard of care, and as a result of this breach of the standard of care, Josey died. After discovery was conducted, Taylor moved for summary judgment in January 2016. In March 2016, the Superior Court of

Laurens County issued an order granting summary judgment to Taylor, finding that "the Plaintiffs have not shown proximate cause." This appeal followed.

Case No. A16A1753

1. Fields argues that the trial court erred in granting summary judgment to Taylor because Fields demonstrated that genuine issues of material fact existed that should have been decided by a jury. We agree. In a claim for medical malpractice three essential elements must be present: "first, the duty of the doctor to his patient; second, the doctor's breach of that duty through the failure to exercise the requisite degree of skill and care; and third, that this failure be the proximate cause of the injury sustained." *Miranda v. Fulton DeKalb Hosp. Authority*, 284 Ga. App. 203, 205 (1) (644 SE2d 164) (2007) (footnote and punctuation omitted). See also OCGA § 51-1-27. The trial court ruled that Fields failed to establish a genuine issue of material fact as to the element of causation, and thus summary judgment was appropriate.

"It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence." *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998) (citations omitted). Furthermore,

3

"[s]ummary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case." *Zeller v. Home Fed. Sav. & Loan Assn. of Atlanta*, 220 Ga. App. 843 (471 SE2d 1) (1996) (citation omitted).

Viewed in this light, the facts show that Josey was treated at Shamrock Nursing and Rehabilitation Center from September 2010 to December 2010, and placed under the care of Taylor. Josey was admitted for a temporary duration because Fields, her daughter and primary caregiver, was unavailable for a period of time. Dr. John Fullerton noted in his expert affidavit (submitted on the behalf of Fields) that upon Josey's admission Shamrock was informed that Josey had been subject to an aggressive program to, inter alia, prevent pressure ulcers.

It is Fields's position that while Josey was at Shamrock, Taylor failed to implement adequate treatment to prevent Josey from developing pressure ulcers. Fields argues that as a consequence of this failure to implement adequate treatment, Josey developed severe pressure ulcers, which ultimately led to her death. Because this case involves an appeal of a grant of summary judgment to Taylor, we must view the

evidence in the light most favorable to Fields to determine whether triable issues of material fact exist. We conclude that they do.

The trial court made no mention of a breach of the standard of care by Taylor. However, in reviewing the record de novo we conclude that, at a minimum, Fields raised a genuine issue of material fact as to whether Taylor breached the applicable standard of care. Dr. Fullerton testified at his deposition that Taylor breached the standard of care in numerous ways including, but not limited to, failing to implement a proper wound care plan, failing to respond to concerns raised by other medical professionals regarding Josey, failing to ensure the performance of adequate assessments of Josey's condition, and failing to follow applicable policies and procedures. Dr. Fullerton testified that Taylor was obligated by the standard of care to take part in the plan of care already implemented for Josey, and he failed to do so. Therefore, Fields established a genuine issue of material fact as to whether Taylor's conduct fell below the relevant standard of care.

Thus, we are left to consider whether summary judgment was appropriate with respect to causation. Succinctly stated, Fields's theory of negligence is that Taylor's breach of the standard of care led to Josey developing severe pressure ulcers, and that in turn those ulcers caused her death. The record shows that Dr. Gerald Gowitt, the

Chief Medical Examiner for DeKalb County , testified with respect to Josey's cause of death that "[w]e can discuss all these other potential causes of death. . . but my opinion is going to be rock solid that she's septic from her ulcers," and that sepsis resulting form ulcers caused her death. Dr. Gowitt's opinion that the sepsis resulting from ulcers caused Josey's death, and Dr. Fullerton's opinion that it was Taylor's breach of the standard of care which caused the ulcers to develop, appears to raise a genuine issue of material fact as to causation that should be determined by a jury. See *Knight v. Roberts*, 316 Ga. App. 599, 603 (1) (730 SE2d 78) (2012) ("To recover in a medical malpractice case, a plaintiff must show. . . that the purported violation or deviation from the proper standard of care is the proximate cause of the injury sustained. In other words, a plaintiff must prove that the defendants' negligence was both the cause in fact and the proximate cause of his injury."(citation omitted)). In fact, Dr. Fullerton also opined that "due to the various breaches in the standard of care by Dr. Taylor, I believe that that led to harm including [Josey's] premature death." Thus, viewed in the light most favorable to Fields, the evidence raised a triable issue of material fact as to causation.

Taylor argues however, that Fields has failed to establish proximate cause because the record does not contain testimony linking the specific acts of Dr. Taylor

6

to Josey's injuries. Taylor fails to point to why he is due judgment as a matter of law, and instead argues that Fields failed to present testimony from a "'proximate causation' expert." However, there is no requirement in Georgia law that plaintiffs use a "proximate causation expert," and it is well established that "[c]ausation may be established by linking the testimony of several different experts." *Walker v. Giles*, 276 Ga. App. 632, 642 (1) (624 SE2d 191) (2005) (citation omitted). Dr. Fullerton opined that Taylor's breach of the standard of care led to Josey developing ulcers, and that the ulcers became infected and she developed sepsis. Dr. Gowitt testified that the sepsis resulting from the ulcers were the cause of Josey's death. Here, Fields has established that there is a genuine issue of material fact as to proximate cause by linking the testimony of her experts, and thus the issue of causation should properly be heard by a jury. "[I]t is. . . well settled that proximate cause is generally an issue for the jury." Id. at 643 (2). Accordingly, the trial court erred when it granted summary judgment to Taylor.

Case No. A16A1754

2. In a related cross-appeal, Taylor argues that the trial court erred when it denied his motion to exclude medical expert testimony because the experts based their opinions on unsworn and uncertified medical records, the experts failed to consider

7

sufficient facts and evidence to form reliable opinions, and the experts' opinions were not the product of reliable principles and methods. When a trial court has conducted a hearing pursuant to OCGA § 24-7-702 (d) to determine the admissibility of an expert's testimony, we review the trial court's determination for an abuse of discretion. See *Craigo v. Azizi,*, 301 Ga. App. 181, 183 (1) (687 SE2d 198) (2009); *Hendrix v. Fulton Dekalb Hosp. Authority*, 330 Ga. App. 833, 836 (769 SE2d 575) (2015) (physical precedent only).

(a) In his first enumeration of error, Taylor argues that the testimony of Fields's experts should have been excluded because they failed to review certified medical records. Taylor relies on *Padgett v. Baxley and Appling County Hosp. Authority*, 321 Ga. App. 66, 70 (1) (741 SE2d 193) (2013) for the proposition that "[t]o be sufficient to controvert the defendant's expert opinion and to create an issue of fact, the plaintiff's expert must base his opinion on medical records which are sworn or certified copies, or upon his own personal knowledge; and he must state the particulars in which the defendant's treatment of the plaintiff was negligent."

However, for the reasons that follow, our holding in *Padgett* does not support reversing the judgment of the trial court. The standard for the facts or data that an expert may rely upon to form an opinion can be found in OCGA § 24-7-703.

The facts or data in the particular proceeding upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, such facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Such facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Nothing in OCGA § 24-7-703 requires an expert to base her opinion on certified medical records. In *Padgett* and the cases preceding it, we considered expert affidavits submitted for the purposes of creating a genuine issue of material fact on summary judgment. See also *Herndon v. Ajayi*, 242 Ga. App. 193, 194 (1) (532 SE2d 108) (2000); *Hailey v. Blalock*, 209 Ga. App. 345 (433 SE2d 337) (1993); *Johnson v. Srivastava*, 199 Ga. App. 696 (405 SE2d 725) (1991). Here, Taylor's motion was to exclude the expert testimony of Fields's experts because their opinions were based on uncertified and unsworn medical records. While this may have been appropriate grounds to exclude their expert affidavits for purposes of summary judgment, it is

9

insufficient grounds on which to exclude their testimony. See generally *Padgett*, supra.

Taylor cites to the admissibility requirements in OCGA § 24-9-902 (11) in support of his contention that the testimony of Fields's experts should be excluded. However, OCGA § 24-9-902 governs extrinsic evidence of authenticity as a condition precedent to admissibility. In particular, OCGA § 24-9-902 (11) states that records that would be admissible under OCGA § 24-8-803 (6) are admissible without extrinsic evidence of admissibility if they are certified. Put succinctly, the records reviewed by Fields's experts would be inadmissible under the standard set out in OCGA § 24-9-902 (11). However, this statute in no way precludes their testimony.

In the instant case, both of Fields's experts were deposed by counsel for Taylor, and it was this testimony that created an genuine issue of material fact noted in our opinion in Case No. A16A1753. Had the only opposition to Taylor's motion for summary judgment been based off of both experts' affidavits, then *Padgett* may have controlled. Yet, because both experts provided sworn testimony which created a genuine issue of material fact for a jury, the question of the admissibility of their affidavits becomes moot. Therefore, while the medical records relied upon by Fields's experts were uncertified and thus inadmissible, because they were facts and data of a

10

type reasonably relied upon by experts in their field in forming opinions, their testimony is admissible and the trial court did not abuse its discretion by denying Taylor's motion to exclude it. See *Evans v. Dept. of Transp.*, 331 Ga. App. 313, 319 (2), fn. 3 (771 SE2d 20) (2015) ("We note that an expert properly may rely on inadmissible facts and data such as hearsay in reaching his opinion, if the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.").

(b) In his second and third enumerations of error Taylor argues that Fields's experts failed to consider sufficient facts and evidence and failed to utilize reliable principles and methods to form their opinions.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

OCGA § 24-7-702 (b). Taylor's argument is that neither of Fields's experts considered the deposition of Dr. Ray (Josey's attending physician while in hospice care), the deposition testimony of Taylor, or the deposition of a nurse who provided hospice care to Josey. Taylor fails to cite any relevant authority that establishes how either Dr. Fullerton or Dr. Gowitt failed to rely on sufficient facts or data, or utilize reliable principles and methods. Instead, Taylor lists what he asserts to be deficiencies in the bases for the opinions of both Dr. Fullerton and Dr. Gowitt. While these alleged deficiencies in the basis for each expert's opinion do implicate the credibility of their opinions or testimony, it was within the trial court's discretion to determine the admissibility of the testimony of both experts based on its review of the record. See *Craigo,* supra, and *Hendrix*, supra. Taylor fails to point out how the trial court abused its discretion, or why the facts and data utilized by both Dr. Fullerton and Dr. Gowitt were insufficient.

Instead, Taylor cites *Berk v. St. Vincent's Hosp. and Medical Ctr.,* 380 F.Supp.2d 334 (S.D.N.Y. 2005) to support his contention that the testimony of Dr.

12

Fullerton and Dr. Gowitt should be excluded. This case is unavailing for several reasons. Initially, this is a federal case from the Southern District of New York and so is not binding precedent on this Court. Moreover, the facts in *Berk* are distinguishable from the instant case. In that case, while the proffered expert did fail to review several depositions, he also based his opinions on facts not supported by the evidence. *Berk v. St. Vincent's Hosp. and Medical Ctr.,* 380 F.Supp.2d 334 (S.D.N.Y. 2005). In *Berk* there was "simply too great an analytical gap between the data and the opinion proffered" by the expert testimony for it to be admissible. *Berk,* supra at 353 (4) (b) (citation omitted). Here, there is no such analytical gap between the data and the evidence proffered. Therefore, the trial court did not abuse its discretion in ruling both experts' opinions admissible, and *Berk* does not support such a conclusion either.

Taylor next cites *Hawkins v. OB-GYN Assocs., P.A.*, 290 Ga. App. 892 (660 SE2d 835) (2008), for the proposition that "[w]here an expert employs differential diagnosis to 'rule out other potential causes' for the injury at issue, he must also rule in the suspected cause, and do so using 'scientifically valid methodology.'" Id. at 893 (1) (citation omitted). This case is also unavailing. In *Hawkins* we ruled that a cause of injury assumed by an expert "was not only unsupported by any evidence, but was contrary to all the evidence of record." Id. Here, Dr. Gowitt did "rule in" the

13

suspected cause, namely the sepsis caused by the pressure ulcers. Dr. Gowitt stated, with respect to ruling out another cause of death (namely aspiration pneumonia) he could "[n]ot rule it out 100 percent. But again, let me make this clear. We're dealing in probabilities, what is the most probable cause of her death. . . . [M]y opinion is going to be rock solid that she's septic from her ulcers." Dr. Gowitt indicated that he reviewed various relevant medical records, Josey's death certificate, and photographs, and examined Josey, as well as reviewed the affidavits of both Fields and Dr. Fullerton. Dr. Gowitt then utilized his expertise to draw a conclusion. Taylor fails to show how this opinion was not rendered using a scientifically valid methodology. Ultimately, Taylor's argument that both Dr. Fullerton and Dr. Gowitt's testimony should be excluded for failure to consider sufficient facts and evidence, and to use reliable methods, rests on unsupported assertions and conclusory statements. Accordingly, it was no abuse of discretion for the trial court to rule the testimony of both Dr. Fullerton and Dr. Gowitt was admissible.

*Judgment reversed in Case No. A16A1753. Judgment affirmed in Case No. A16A1754. Ellington, P. J., and Branch, J., concur.*