**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A1155. TOMEH v. BOHANNON et al.

MILLER, Judge.

Alikina Bohannon, individually and on behalf of her deceased son, Xavier Bohannon, sued Dr. Mohammad Tomeh, South Fulton Medical Center ("South Fulton"), and numerous other medical providers, alleging that the hospital and its staff committed malpractice prior to and during Bohannon's labor and delivery, resulting in Xavier's death shortly after he was born prematurely. Dr. Tomeh, a pediatrician, filed a motion for summary judgment, arguing that no doctor-patient relationship existed between him and either Bohannon or Xavier. Following a hearing, the trial court denied Dr. Tomeh's motion, and this Court subsequently granted Dr. Tomeh's application for interlocutory review. On appeal, Dr. Tomeh

contends that is it undisputed that no doctor-patient relationship existed between himself and Bohannon or Xavier. We agree and reverse.[1]

> [T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). We review the denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion for summary judgment. Id. at 624 (1) (a).

---

[1] This appeal only concerns Bohannon's claims against Dr. Tomeh. Accordingly, we express no opinion as to her claims against other medical providers.

2

So viewed, the evidence shows that Bohannon first sought prenatal care from obstetrician Dr. Gabriel Nassar when she was approximately 25 weeks pregnant. Bohannon was of advanced maternal age and suffered from insulin-dependent diabetes and hypertension. Her baby's estimated due date was July 25, 2011. On June 22, 2011, Bohannon arrived at South Fulton's labor and delivery unit, complaining of pain and leaking fluid. Bohannon underwent fetal monitoring and was discharged a few hours later with instructions to rest and drink water.

Bohannon alleged in her complaint that at approximately midnight on June 26, 2011, she called 911 complaining of contractions, pain and vaginal bleeding and was taken to South Fulton by ambulance. She arrived at the hospital at around 1:15 a.m. on June 27 and was examined by Dr. Nassar an hour later. At 3:19 a.m., Dr. Nassar delivered Xavier by cesarean section.

Immediately after birth, Xavier was blue and limp. Medical personnel intubated Xavier and attempted to resuscitate him, but he died around 3:44 a.m. The handwritten notations on Xavier's medical records show that a respiratory therapist intubated Xavier and neonatal nurse practitioner Sara Posley oversaw his treatment. Nurse practitioner Posley was overseen by Dr. Babatunde Onasanya. The intraoperative record, as well as the handwritten records, show that Dr. Nassar, nurse

3

practitioner Posley, an anesthesiologist, a respiratory therapist, a scrub tech, and several nurses were present in the operating room during Xavier's birth. Under South Fulton's written policies, a neonatologist, nurse practitioner, physician's assistant, or respiratory therapist is responsible for the intubation of high-risk newborns.

Prior to delivery, Bohannon had not chosen a pediatrician for Xavier. Dr. Tomeh just happened to be the on-call pediatrician at South Fulton on June 27, 2011. As an on-call pediatrician, Dr. Tomeh treated infants in the normal nursery but did not treat infants in the neonatal intensive care unit, and he did not intubate or resuscitate infants immediately following delivery. According to South Fulton's policies, a pediatrician trained in resuscitation and capable of intubation was to be present, upon request, during cesarean sections and high-risk vaginal deliveries. Xavier's computer-generated admission records from South Fulton list Dr. Tomeh as Xavier's admitting and attending doctor. Dr. Tomeh is also listed on an automatically-generated coding summary as the provider who intubated Xavier and performed resuscitation efforts.

In his affidavit in support of his motion for summary judgment, Dr. Tomeh averred that he never consulted with nor provided treatment for Xavier or Bohannon. Dr. Tomeh further averred that he was not consulted about Xavier; he was not called

4

or asked to treat Xavier at any point; he did not refuse to treat Xavier; he was not present at South Fulton on June 27, 2011; and he was not required to be present at that time. Dr. Tomeh also averred that he had never met Bohannon or Xavier, he did not charge Bohannon or her insurance for any treatment, and he accepted no payment for any alleged treatments. Specifically, Dr. Tomeh denied that he participated in the efforts to intubate or resuscitate Xavier.

In his sole enumeration of error, Dr. Tomeh contends that the trial court erred in denying his motion for summary judgment because there was no doctor-patient relationship between him and Xavier or Bohannon. We agree.

It is well settled Georgia law that proof of three essential elements is required to establish liability in a medical malpractice action: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." (Citation and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003); see also OCGA § 51-1-27. Additionally, "[d]octor-patient privity is [an essential element] because it is this relation which is a result of a consensual transaction that establishes the legal duty to conform to a standard of conduct. The relationship is considered consensual where the patient

5

knowingly seeks the assistance of the physician and the physician knowingly accepts him as a patient." *Anderson v. Houser*, 240 Ga. App. 613, 615 (1) (523 SE2d 342) (1999); see also *Herrington v. Gaulden*, 294 Ga. 285, 286 (751 SE2d 813) (2013) (plaintiff in medical malpractice case must usually prove the existence of a doctor-patient relationship).

(a) The evidence does not show the existence of a doctor-patient relationship between Dr. Tomeh and Bohannon or Xavier.

Dr. Tomeh, by his affidavit, presented a plethora of evidence that he did not treat Bohannon or Xavier. Moreover, the director of medical records at South Fulton in her affidavit averred that when a baby is born alive at the hospital, a medical chart is created and an admitting and attending physician must be assigned to the baby. Where, as here, the parent has not selected a pediatrician for the child, the pediatrician who is on call at the time of the baby's birth is assigned automatically as the admitting and attending physician in the child's chart. The director of medical records specifically averred, "If the baby dies in the operating room and prior to the transfer to the nursery, the on-call pediatrician will still be listed as the admitting and attending physician in the baby's medical records, even if the pediatrician never treated the baby."

6

The director of medical records also averred that South Fulton's patient software system automatically creates a coding summary, which lists the name of each patient's attending physician in conjunction with all the treatment rendered to the patient, regardless of whether the attending physician actually performed the treatment. The coding summary is not a billing document and does not necessarily reflect the services billed by the hospital. Accordingly, even though the medical records listed Dr. Tomeh as Xavier's pediatrician and the coding summary indicated that Dr. Tomeh provided certain treatments to Xavier, those records do not necessarily establish that Dr. Tomeh treated Xavier. Accordingly, Dr. Tomeh presented evidence negating an essential element of Bohannon's claim – the existence of a doctor-patient relationship – and the burden then shifted to Bohannon to point to specific evidence giving rise to a triable issue. *Cowart*, supra, 287 Ga. at 623 (1) (a). Bohannon failed to do so.

Notably, in response to Dr. Tomeh's motion for summary judgment, Bohannon did not address Dr. Tomeh's affidavit, nor that of the director of medical records. Bohannon also did not address the handwritten hospital records showing that Dr. Tomeh was not present in the operating room at Xavier's birth and did not participate in the efforts to save Xavier. Instead, in opposition to Dr. Tomeh's motion for

summary judgment and on appeal, Bohannon relies solely on the coding summary from South Fulton and on the fact that Dr. Tomeh is listed on Xavier's computer-generated medical records as his attending and admitting physician.

> Before circumstantial evidence can have any probative value to rebut or contradict direct and positive testimony of an unimpeached witness of the alleged facts in question, such evidence must point at least more strongly to a conclusion opposite to the direct testimony. It is not sufficient that such circumstantial evidence points equally one way or the other.

(Citation omitted.) *Rosales v. Davis*, 260 Ga. App. 709, 712 (2) (580 SE2d 622) (2003). Here, the circumstantial evidence, such as the coding summary and the computer-generated medical records, which were shown to sometimes be inaccurate, cannot rebut Dr. Tomeh's direct testimony that he did not treat Xavier or Bohannon. Since the burden shifted to Bohannon and she failed to point to any specific evidence giving rise to a triable issue, the trial court erred in denying Dr. Tomeh's motion for summary judgment.

(b) Moreover, the mere fact that Dr. Tomeh was the on-call pediatrician at the time of Xavier's birth does not establish a doctor-patient relationship.

"Although a doctor who has agreed to be on-call makes himself available to be consulted regarding a patient's condition, that fact alone does not indicate that the doctor has agreed to establish a doctor-patient relationship with any patient who presents herself to the hospital for diagnosis and treatment." *Anderson*, supra, 240 Ga. App. at 619 (1).

Here, although Dr. Tomeh was the on-call pediatrician at the time of Xavier's birth, he presented affidavit evidence showing that he did not diagnose or treat Xavier, consult on his care, or even meet him. A doctor who is merely on call, but who renders no treatment nor care to a patient does not have a doctor-patient relationship. See *Anderson*, supra, 240 Ga. App. at 615-619 (1) (no doctor-patient relationship existed where on-call doctor did not consult with or treat patient); *Minster v. Pohl*, 206 Ga. App. 617, 620 (1) (426 SE2d 204) (1992) (no doctor-patient relationship existed where on-call doctor merely reviewed patient's x-ray at nurse's request); compare *Rindsberg v. Neacsu*, 317 Ga. App. 269, 274 (730 SE2d 525) (2012) (question of fact remained as to whether doctor-patient relationship existed where on-call doctor asked nurse about patient's status, spoke to patient's family, and refused family's request to examine patient).

A plaintiff has to show more than that a doctor was the on-call physician at the time of the patient's injury. Georgia law requires some evidence of an actual doctor-patient relationship. In this case, that Dr. Tomeh was the on-call pediatrician at the time of Xavier's birth alone cannot give rise to any liability for malpractice, and since Bohannon has failed to come forward with any evidence to contradict Dr. Tomeh's sworn statement that he did not treat her or Xavier, the trial court erred in denying Dr. Tomeh's motion for summary judgment.

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*