**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 19, 2023**

# In the Court of Appeals of Georgia

A22A1714. MYFAMILYDOC, LLC et al. v. JOHNSTON et al.

McFADDEN, Presiding Judge.

Margaret Johnston, the surviving spouse and administrator of the estate of decedent Wayne Johnston, filed a medical malpractice action against Dr. Ravin Talati, nurse practitioner Mary Chastain, and MyFamilyDoc, LLC, alleging that the defendants had breached the standard of care by failing to timely review laboratory results showing that the decedent was severely anemic, to a degree that constituted a medical emergency. The defendants filed joint motions for summary judgment and to exclude expert testimony regarding causation. The trial court denied the motions; and the defendants brought this appeal, challenging the denial of summary judgment to Chastain based on the trial court's finding that there is a question of fact as to

whether she owed a duty to the decedent and contesting the court's admission of the expert testimony.

We reverse the denial of summary judgment to Chastain because she has pointed to undisputed evidence showing that she owed no duty of care to the decedent. But we affirm the trial court's refusal to exclude the expert testimony because the court did not abuse its discretion in allowing such testimony.

1. *Denial of summary judgment to nurse Chastain.*

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c)." *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 306 Ga. 829, 830 (1) (834 SE2d 27) (2019) (citation and punctuation omitted omitted). On appeal, "[w]e review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *In the Matter of Tapley*, 308 Ga. 577 (842 SE2d 36) (2020) (citation and punctuation omitted).

So viewed, the evidence shows that Wayne Johnston began receiving medical care from Dr. Talati at his MyFamilyDoc practice in July 2017. On August 27, 2018, Johnston, who had been experiencing fatigue and shortness of breath, was seen by Dr. Talati at MyFamilyDoc. Dr. Talati recommended that Johnston return the next morning to have his blood drawn for testing, and a follow-up appointment with Dr. Talati was scheduled for September 4th. The next morning, August 28th, Johnston had his blood drawn at MyFamilyDoc and the samples were sent to an outside laboratory for testing. On August 29th, the laboratory electronically transmitted the test results, showing that Johnston was anemic, to MyFamilyDoc.

Dr. Talati and nurse practitioner Chastain were the only medical providers at MyFamilyDoc who were responsible for reviewing patient lab results, but neither of them looked at Johnston's lab results when they arrived from the laboratory. According to Dr. Talati, he would have reviewed the results on the morning of Johnston's follow-up visit with him on September 4th. But Johnston died prior to that appointment and Dr. Talati did not view the test results until after he had been notified of Johnston's death. After viewing the test results, Dr. Talati called Margaret Johnston, offered his condolences, and told her that the laboratory results showed that her husband had been anemic.

In seeking summary judgment, Chastain claims that she had no duty to review Johnston's blood test results because he was not her patient. See *Herrington v. Gaulden*, 294 Ga. 285, 286 (751 SE2d 813) (2013) (plaintiff in medical malpractice case must prove that he was a patient of the defendant in order to establish the defendant's legal duty); *Curmode v. Alsbrooks*, ___ Ga. App. ___ (Case No. A22A0801, decided Oct. 27, 2022) (duty inherent in the medical provider-patient relationship is an essential element of a medical malpractice action, so there can be no liability for malpractice in the absence of that relationship). Chastain has pointed to the absence of evidence in the record showing such a duty arising from a medical provider-patient relationship between her and Johnston, noting plaintiff Margaret Johnston's deposition testimony admitting that although she was present for her husband's medical appointments, she had "no idea" if he had ever received treatment from Chastain.

In addition to the absence of evidence showing a provider-patient relationship, Chastain has also cited specific evidence demonstrating that Johnston was not her patient. In her deposition, Chastain testified not only that she had not seen Johnston at the office, but that she had never even met him. Chastain explained that she and Dr. Talati were the only providers at MyFamilyDoc who were qualified to evaluate

4

patients; that they had separate patient schedules, so she saw her patients and Dr. Talati saw his; that they each reviewed laboratory results for their own patients; and that she would only review laboratory results for Dr. Talati's patients if he specifically asked her to do so or if the laboratory called the office to report critical test results and she was the first provider available to review them. With regard to Johnston, Chastain testified that she "never saw him," that she "didn't take care of him," that she "didn't order his labs," that she "never talked to Dr. Talati about him," and that she "never discussed [his] care with anybody." As for Johnston's last visit with Dr. Talati on August 27, 2018, the undisputed evidence, including the depositions of Margaret Johnston and Dr. Talati, shows that Johnston was not seen by Chastain and that he was seen only by Dr. Talati after a medical assistant had obtained Johnston's vital information.

> A defendant seeking summary judgment may demonstrate [that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law] by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

5

*Montgomery v. Travelers Home & Marine Ins. Co.*, 360 Ga. App. 587, 588 (1) (859 SE2d 130) (2021) (citation and punctuation omitted).

Because Chastain has presented evidence negating the essential element of duty arising from a provider-patient relationship and demonstrated the absence of evidence showing that she owed a duty to the decedent, appellee Margaret Johnston must point to specific evidence giving rise to a triable issue. In attempting to meet this burden, she has not argued or cited evidence showing that Dr. Talati specifically asked Chastain to review Johnston's test results or that Chastain was the first provider available to review the critical results after a call from the laboratory. Rather, she claims that Dr. Talati deposed that Chastain had a duty to review Johnston's blood test results, citing his affirmative response to a question indicating that "responsibility for reviewing these lab results lies with either you or Mary Chastain, but one of the two of you is required to review completed lab results[.]" But the appellee has misconstrued Dr. Talati's testimony, which must be viewed in the context of his entire deposition. See *Forrester v. Ga. Dept. of Human Svcs.*, 308 Ga. App. 716, 728 (1) (a) (iv) (708 SE2d 660) (2011) (on summary judgment, specific testimony "read in the context of [the] entire deposition"); *Berson v. American Golf Corp.*, 265 Ga.

6

App. 772, 774-775 (595 SE2d 622) (2004) (considering statements "in the context of [the] deposition testimony as a whole").

A review of Dr. Talati's entire deposition reveals that he confirmed that he and nurse practitioner Chastain saw their own patients, that Johnston was his patient, that he ordered Johnston's blood tests, and that he would have reviewed the laboratory results before Johnston's follow-up visit with him. While the portion of Dr. Talati's testimony cited above acknowledged that either he or Chastain was responsible for reviewing test results, it did not indicate that both of them bore such a responsibility or that Chastain had that responsibility in this case. On the contrary, it is apparent from a review of Dr. Talati's entire deposition that he, not Chastain, was the medical provider responsible for reviewing his patient Johnston's test results. Indeed, "when the [cited testimony is] viewed in the context of Dr. [Talati's] entire deposition, it is readily apparent that [he] was not referring to the specific [duty] that the [plaintiff] sought to attribute to [nurse Chastain]." *Robles v. Yugueros*, 343 Ga. App. 377, 386 (2) (b) (807 SE2d 110) (2017) (emphasis omitted).

Margaret Johnston also points to an audit trail indicating that Chastain accessed the decedent's chart on the last date he was seen by Dr. Talati. But she has cited no evidence showing that such access created a provider-patient relationship between

7

Chastain and Johnston or a duty for Chastain to review Johnston's subsequent laboratory results. The only cited evidence explaining that audit trail came from Chastain's deposition testimony that if she accessed the chart, she did not mean to do so; that such access would have occurred accidentally while she was scrolling through the list of patients; and that she never saw anything in Johnston's chart. "Accordingly, even though the [audit trail shows that Chastain accessed Johnston's chart, it does] not . . . establish that [she] treated [him or contravene the other] evidence negating an essential element of [Margaret Johnston's] claim — the existence of a [provider]-patient relationship[.]" *Tomeh v. Bohannon*, 329 Ga. App. 596, 599 (765 SE2d 743) (2014).

Given the undisputed evidence establishing that Johnston was never Chastain's patient and the appellee's failure to point to any evidence demonstrating that Chastain otherwise had a duty to review Johnston's test results, there is no genuine issue of material fact and Chastain is entitled to judgment as a matter of law.

> The touchstone for negligence cases of this nature, however they are couched, must be the actual existence of a [medical provider]-patient relationship, not some inchoate or nebulous responsibility. We decline thus to take this opportunity to find that a [nurse practitioner] could be held liable to a potential patient with whom [she] has never spoken, seen, met, or been consulted about.

8

*Guida v. Lesser*, 264 Ga. App. 293, 298 (590 SE2d 140) (2003) (citations omitted).

Accordingly, we reverse the trial court's denial of Chastain's motion for summary

judgment. See *Pham v. Black*, 347 Ga. App. 585, 588 (1) (820 SE2d 209) (2018) (trial

court erred in denying defendant's motion for summary judgment where there was no

evidence of a doctor-patient relationship).

2. *Expert testimony.*

"OCGA § 24-7-702 governs the admissibility of expert testimony, and it

requires that the trial court act as gatekeeper to ensure the relevance and reliability

of expert testimony." *Allen v. CFYC Const.*, 354 Ga. App. 890, 892 (1) (842 SE2d

297) (2020) (citation omitted). In language now codified at OCGA § 24-7-702 (b)

(3),[1] a qualified expert may give opinion testimony if, among other things, "[t]he

testimony is the product of reliable principles and methods[.]" Under OCGA § 24-7-

702, the trial court must "ensur[e] that an expert's testimony both rests on a reliable

foundation and is relevant to the task at hand. Pertinent evidence based on

scientifically valid principles will satisfy those demands." *Daubert v. Merrell Dow*

*Pharmaceuticals*, 509 U. S. 579, 597 (IV) (113 SCt 2786, 125 LE2d 469 (1993). See

---

[1]This same language was previously in subdivision (b) (2) of OCGA § 24-7-702, which was in effect when the trial court issued its ruling in April 2022, but was moved to subdivision (b) (3) as part of a statutory amendment, effective July 1, 2022.

9

OCGA § 24-7-702 (f) ("in interpreting and applying this Code section, the courts of this state may draw from the opinion[] of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (1993)"). "Whether expert testimony ought to be admitted under OCGA § 24-7-702 is a question committed to the sound discretion of the trial court[, so w]e will not disturb the trial court's determination absent [an] abuse of discretion." *Allen*, supra (citation omitted). Accord *Howell v. Cochran*, 365 Ga. App. 80, 84 (877 SE2d 625) (2022).

The appellants argue that the trial court abused its discretion in denying their motion to exclude a doctor's expert opinion that Johnston's severe anemia was a proximate cause of his death because the doctor did not base his opinion on a proper differential diagnosis, "which is a patient-specific process of elimination that medical practitioners use to identify the most likely cause of an injury from a list of possible causes." *Hawkins v. OB-GYN Assoc.*, 290 Ga. App. 892, 893 (1) (660 SE2d 835) (2008) (citation and punctuation omitted). Using this methodology, "the physician considers all relevant potential causes of the patient's symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history." *Smith v. Finch*, 285 Ga. 709, 711 (1) (681 SE2d 147) (2009) (citation and punctuation omitted). The appellants acknowledge that the doctor in this case was not

required to completely eliminate every possible cause of Johnston's death, but they claim that he failed to take account of other potential causes and improperly dismissed Johnston's other comorbidities as possible causes of death simply because it was "not [his] opinion."

But a review of the doctor's entire deposition reveals that he did not fail to consider, or give such dismissive testimony of, other possible causes of death. See *Forrester*, supra (considering testimony in context of deposition as a whole); *Berson*, supra (same). Rather, the doctor expressly cited Johnston's various comorbidities listed on his death certificate, including cardiovascular disease, diabetes, hypertension, and anemia. He agreed with the certificate identifying cardiovascular disease as the immediate cause of death, he testified that all of Johnston's comorbidities could have caused his death, and he conceded that anemia by itself did not cause Johnston's death. The doctor opined, however, that Johnston's anemia aggravated the other underlying diseases, that his severe anemia coupled with his other comorbidities led to his death, and that he probably would not have died when he did without such severe anemia. He explained that anemia was the only variable that had changed from an earlier blood test in July 2018 until the test at issue in August 2018, which showed a significant drop in Johnston's red blood cells so that

11

proper oxygenation of his heart was not possible at that point. The doctor testified that Johnston's other conditions were stable; that he was not having acute symptoms from them; and that his severe anemia made the other conditions worse, "particularly his heart disease."

The appellants cite *Guinn v. AstraZeneca Pharmaceuticals*, 602 F3d 1245 (11th Cir. 2010) and *Shiver v. Ga. & Fla. Railnet*, 287 Ga. App. 828 (652 SE2d 819) (2007) to support their argument that a mere temporal relationship between Johnston's anemia and his death does not eliminate alternative causes of death. While the expert in this case considered such a temporal relationship, he did not base his opinion solely on that relationship. Rather, as recounted above, he also considered the severity of Johnston's anemia, the significant drop in his red blood cells, and how those factors impacted Johnston's other relatively stable comorbidities.

Moreover, we note that in his own deposition, defendant Dr. Talati also acknowledged that Johnston's severe anemia was life-threatening. He testified that anemia can be a fatal condition; that he ordered Johnston's blood work in order to determine whether, among other things, he was anemic; that the blood test results showed that Johnston's anemia was critical and required emergency medical

12

treatment; and that he would have instructed Johnston to report immediately to the emergency room if he had seen the test results prior to Johnston's death.

Trial courts must determine whether to allow "expert opinions on a case-by-case basis." *Freeman v. LTC Healthcare of Statesboro*, 329 Ga. App. 763, 765-766 (766 SE2d 123) (2014). Under the circumstances of the instant case, we conclude that the appellants have "fail[ed] to show how [the expert's] opinion was not rendered using a scientifically valid methodology . . . . Accordingly, it was no abuse of discretion for the trial court to rule [that] the testimony of [the expert] was admissible." *Fields v. Taylor*, 340 Ga. App. 706, 713 (2) (b) (797 SE2d 127) (2017). See also *Emory Univ. v. Willcox*, 355 Ga. App. 542, 544 (2) (844 SE2d 889) (2020) (trial court did not abuse its discretion in denying defendants' motion to exclude doctor's expert opinion).

3. *Causation.*

In their final enumeration of error, the appellants reason that if the trial court erred in failing to exclude the expert testimony discussed above, then they would be entitled to summary judgment because there would be no proof of causation. But because we held above that the trial court did not err in refusing to exclude the expert testimony, this enumeration is without merit.

13

*Judgment affirmed in part and reversed in part. Gobeil and Land, JJ., concur.*